FILED _____ LODGED
_____ RECEIVED _____ COPY

FEB 0 4 2010

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ P DEPUTY

James A. Mills
P.O. Box 4234
Phoenix, Arizona 85030
(480) 217- 3627

# In The United States District Court
## For The District Of Arizona

| | |
|---|---|
| James A. Mills ) | **CV-10-262-PHX-GMS** |
|       Plaintiff, ) | |
| ) | Case Number |
| ) | |
| VS. ) | |
| ) | |
| ) | Civil Action |
| Southwest Service Administrator, ) | |
| ) | |
|       And ) | |
| ) | |
| Phoenix Painting & Allied Trades, ) | |
|           defendant ) | |

## Jurisdiction

The jurisdiction of the court is invoked under 29 USC #1132 (ERISA Section 502(a) (3))), Americans with Disabilities Act of 1990, title I- Employment 42 U.S.C. # 12111-12117.

## Complaint

This action is filed to prevent manifest injustice to the property right of James A. Mills.

The plaintiff James A. Mills brings this action to seek redress for Defendants' fraudulent acts. Defendants had a common plan to engage in acts that

violated multiple laws. These acts were to deceive and cause injury to the plaintiff.

The Phoenix Painting & Allied Trades Union #86 as sponsor, fiduciary and trustee and Southwest Service Administrator as fiduciary action include malicious and/or intentional and/or negligent conduct in their respective capacities in the following acts:

1. Defendants' furnished misleading information in order to deceive and prevent the plaintiff from an appeal.

   In misleading the plaintiff, the defendants violated the fiduciary obligations that ERISA imposes upon plan administrators. To participate knowingly and significantly in deceiving a plan's beneficiary in order to save money at the participant's expense, is not to act "solely in the interest of the participant and beneficiary."There is no basis in the statute for any special interpretation that might insulate the defendants from legal consequences of the kind of conduct that often creates liability even among strangers.

2. The defendants' ignored plaintiff requests for records in order to prevent the plaintiff from a full and fair review.

   Erisa plan procedures and Review of Claims #55,517. What constitutes a "full and fair" review. A " full and fair review" includes knowing what evidence the decision- maker relied on, having an opportunity to address the accuracy and reliability of that evidence and having the decision-maker reconsider the evidence presented prior to reaching and rendering his decision.
   A full and fair review does not necessarily require a trial-like atmosphere to rule on evidence, a written record will suffice.

3. The defendants' refused to review to allow the plaintiff Due Process under ERISA.

4. The defendants discriminated against the plaintiff because his injury became a disability.

5. The plaintiff draws the inference that blacks are not to participate in the Painter's Union pension Benefit program.

Civil Rights Act of 1964 Sec 703 c. It   shall be an unlawful employment practice for a labor organization: (1) to exclude or expel from its membership, or otherwise to discriminate against, any individual because of race, color, religion, sex, or national origin.

Demand

Wherefore, Plaintiff prays for judgment against Defendants and an award of the following relief:

Compensatory damages of $300,000

Punitive damages of    $100,000

Attorney's fees, cost and such further relief as may be proper.

1.  The plaintiff had 12 years working out of the Union #86, from 1963 to 1974.

2.  The twelve years accumulated $14,672.79 in contribution to the retirement pension plan at $.99 per hour for the plaintiff labor, there is 37 years of interest.

3.The 37 years of interest represents 444 months and the $14,672.79 X 6.5% X 444= $423,456.12, with the interest of the 12 years or 144 months accumulating the 14,672.79 and the compounded interest the total could be much greater.

Respectfully Submitted this  4   Day of February, 2010.

*James A. Mills*

Pro-Se
James A. Mills
P.O. Box 4234
Phoenix, Az. 85030
(480) 217-3627

3

Nature Of Complaint

The plaintiff in 1963 applied for the union painter apprenticeship program, the local painter union business agent was Johnny Kliner and the apprenticeship coordinator was Allen Potter.
The plaintiff needed three things to be accepted into the program

     1. High School Diploma,

     2. IQ test with results over 110 and

     3. A color test that proved the petitioner was not color blind.

The plaintiff furnished a copy of his High School Diploma, results of I Q test from High School and a independent test for color blindness. The plaintiff became the first black union painter apprentice in the State of Arizona. The first six months of the plaintiff apprenticeship no one would work with him.

The plaintiff worked out of Local #86 from 1963 to part of 1974. The petitioner has never been fired or without a job before been injured.

The petitioner became one of the few journeymen that could do anything in the field, paint, spray conventional or airless, hang wall coverings, hang wallpaper, finished furniture, gold leaf, glaze, tape and finish walls.

The plaintiff enjoyed the work and worked very hard for the men that he worked for.

The plaintiff started his own painting company in July, 1974, the petitioner was injured in a car accident in 1975 by Social Security Administration record, the plaintiff fractured 5 vertebras in his back, which cause nerve damage, and the plaintiff could not walk, had spasm and had lost the ability to do many things.

The plaintiff was in therapy at St. Luke hospital for two years, the Social Security Administration deemed the petitioner disable.

The plaintiff used Confidence, Trust and Good Faith in dealing with Phoenix Painting & Allied Trades Union and Southwest Service Administrator.

The plaintiff filed for benefits with American Benefit Plan Administrators in 1977 or 1978, the trust administrators never responded to the petitioner, from 1963 to 2005 the plaintiff knew only that he had contributed to a retirement plan, there was never literature on requirements for this plan until 2005.

The plaintiff applied again for disability benefits with American Benefit Plan Administrators in the month of August, 2004, the petitioner never received a reply from the trust Administrators. The plaintiff do not recall a paper application filed until 2009.

The plaintiff returned to the American Benefit Plan Administrators office in late November, 2004 applied for disability benefits again. The pension analyst Debby Matyas handled this application; she told the plaintiff that he was not vested because the plaintiff did not have 12 consecutive years of pension credits and the plaintiff had only eight and one half years but the plaintiff had 12,261 total hours of contributions by Genevieve Placencio record from 1965 thru 1973.

The plaintiff told Debby Matyas that he worked for over 12 years with an average above 1000 contributions hours per year, she told the petitioner that she would take the application before the board of trustees on or about December 27, 2004.

The plaintiff request for benefits was terminated/non vested status on March 22, 2005 and the plaintiff was terminated in 1973. (See Exhibit 1)

Page 8 and 9 Phoenix Painters' Pension Trust Fund, May 1, 2001: **Permanent Break in Covered Employment before December 1, 1976;**

Between December 1, 1965 and December 1, 1976, an Employee incurred a Permanent Break in Covered Employment and his previously accumulated was cancelled if he failed to earn at least one quarter of Pension Credit in two consecutive Plan Years.

**Grace Periods before December 1, 1976;**

There were periods before December 1, 1976 when an Employment was absent from Covered Employment which were not counted towards a Break in Covered Employment. The time spent in a "grace period" did not add to the Pension Credit of an Employee. Grace periods were recognized for:
  1. Disability.
  2. Service in the Armed Forces.

6

3. Employment in a Supervisory Capacity.
   Grace periods of up to three consecutive Plan Years may have been
granted for disability. There was no limit to the length of time for
which a grace period may have been granted for service in the Armed
Forces or employment in a Supervisory Capacity.

   If you were absent from Covered Employment and were in a grace
period, you would have resumed earning Pension Credit when you
returned to Covered Employment. Note: There were time limits for
applying to the Trustees for recognition of grace periods. These
time limits have now expired.

April 25, 2005 the plaintiff requested the pension analyst to furnish the way that the hours of work were calculated, the hourly wage scale for 1963 fist year apprentice, 1972, 1973 and a copy of the total record in order to file an appeal.(See exhibit 2)

The plaintiff never received a response from the pension administrator on the information requested on April 25, 2005. The plaintiff went to the painter's union #86 and requested the hourly scale for 1972, 1973 and the scale for a 1st year apprentice, the plaintiff was told that they did not have any information.

June 23, 2005 the plaintiff went to the Tempe Public Library to get help researching the local painter's union wage scale, the librarian Dorothy Stewart help the plaintiff with the research, being unable to find any material on the matter Dorothy Stewart called the painter's union stating who she was and what she wanted, she was told that she would be mailed a letter on that day of the wage scale for 1972, 1973 and 1974.

The plaintiff went to the Tempe Public Library on June 24, 2005 to get the letter from the painter's union regarding the wage scale. (See exhibit 3)

The plaintiff went to ASU library and requested help getting information on the wage scale of 1963. The plaintiff received some information on the wage scale. (See exhibit 4)

The plaintiff went to the Registrar of Contractors to see when he received his license to do business as a painting contractor because the plaintiff knew that he worked out of the union for the first 4 months of 1974, if the plan year ends November 30 and starts December 1, the plaintiff had to work in 1974 because he did not finished work on the Valley National Bank Center until February 1974. (See exhibit 5)

The plaintiff never received the information requested from Southwest Service Administrators, so the plaintiff filed another request for the information on July 2, 2005 with American Benefit Plan Administrators. (See exhibit 6)

The plaintiff received a response from the pension analyst Genevieve Placencio of Southwest Service Administrators on November 7, 2005 with only a detailed sheet with the hours of work and pension credits, not what was requested by the plaintiff. (See exhibit 7)

The plaintiff filed a notice of intent in order to receive the requested information on December 15, 2005, with the painter's union #86 and Southwest Service Administrator. (See exhibit 8)

The plaintiff received a correspondence from the pension analyst Genevieve Placencio on January 10, 2006 that the notice of intent on December 15, 2005 had been received and it was going to be presented to the Board of Trustees as an appeal. (See exhibit 9)

The plaintiff received a notice from David Niederdeppe attorney at law on February 22, 2006 that the notice of intent had been treated as an appeal on February 21, 2006 by the Board of TRUSTEES AND IT WAS DENIED. The plaintiff was not vested because he did not have 12 years of pension credits. (See exhibit 10)

The plaintiff knew after receiving the information on the wage scale that he had over 10 years of pension credit without an intervening permanent break.

The plaintiff was confused on what was happening, he never had any trouble with the painter's union #86 business agents Johnnie Kliner, Sonny Williams or the apprentice coordinator Allen Potter.

The plaintiff also knew that he never had a full and fair review because he never was furnished any information requested of the defendants.

The plaintiff not knowing what was happening after receiving the letter from The Trust Fund lawyer stating that the plaintiff had only one way to be vested and the plaintiff did not meet the standard.

The plaintiff decided to wait until he was 65 years old to apply for pension benefits again.

The plaintiff filed for pension benefits on March 10, 2009, the pension benefits were denied on March 11, 2009 by Genevieve Placencio. (See exhibit 11)

The plaintiff filed a petition for review on April 7, 2009 Neither Southwest Service Administrator or the painter's union responded  to the appeal. (See exhibit 12)

The plaintiff filed a Notice of Intent with Southwest Service Administrator and Phoenix Painting and Allied Trades Union #86 on August 14, 2009. ( See exhibit 13)

The defendants' filed a correspondence on September 9, 2009 requesting the plaintiff to not file a claim from Beth Lind pension manager until the trustees next meeting. (See exhibit 14)

December 15, 2009 the plaintiff received a correspondence from Beth Lind (Pension Manager) stating that the trustees reviewed the December 15, 2005 correspondence and confirmed that vesting requirements were not met on December 3, 2009. The plaintiff knew at this point that fraud and

discrimination was being perpetrated upon him. (See exhibit 15)

    Plan procedures and Review of claims
     #55,518. Decision on review.  A decision on review should not be
    made later than 60 days after the plan receives a request for
    review, unless special circumstances require an extension of time
    for processing. In that case the decision must be made no later than
    120 days after the review request. A plan obligation to render a
    decision "promptly" was violated where a request for review of a
    claim denial was not resolved until 132 days after the acknowledged
    receipt of the request for review. The time period for making a
    decision on review runs from the time of the decision-maker's
    receipt of a request for review and not from the time when all
    information requested by the decision maker has been forwarded by
    the claimant.

 Page 69 of Phoenix Painters' Pension Trust Fund May1,
2001
    **Section 3a.05 Eligibility**; An Employee shall be
eligible for a Partial Pension under this Plan if he
satisfies all of the following requirements:
 (a) He would be eligible for any type of pension
Under this Plan if his total Pension Credit were
treated as service under this Plan.
 (b)  He has, under each of the Signatory Plans in
which he has credited service for purposes of this
ARTICLE III-A, at least one year of Pension Credit.
 (c) In case of an Employee applying for a pension
based on disability, he is able to meet the definition
in this Plan.
 (d) In the case of an Employee applying for a pension
based on age, he meets the minimum age requirements in
this Plan.


 Fiduciary standards
 #53,501. Standards of care for fiduciaries.
  ERISA regulates the conduct of fiduciaries with respect to benefit
 plans for which they have investment or administrative
 responsibilities by establishing certain basic standards of care
 they must follow in conducting plan business. ERISA requires that a
 plan fiduciary discharge his duties with respect to benefit plan
 solely in the interest of the plan's participants and beneficiaries.
 In the discharge of those duties, the fiduciary must act:

11

#53,505; exclusive purpose of providing benefits to participants and beneficiaries, with the care, skill, prudence, and diligence, under the circumstances then prevailing, that a prudent man acting in like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and like aims #53,507; in Accordance with the documents and instruments governing the plan to the extent that those documents and instruments are consistent with the provisions of ERISA.

#56,483 For Fiduciary duty not to make misleading communications.

Respectfully submitted this 4 day of February, 2010.

James A. Mills

Pro-Se
James A. Mills
P.O. Box 4234
Phoenix, Az. 85030
(480) 217-3627

12