**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| James A. Mills,<br><br>    Plaintiff,<br><br>vs.<br><br>Southwest Service Administrators, Inc.,<br>Phoenix Painting & Allied Trades,<br><br>    Defendants. | No. CV-10-00262-PHX-GMS<br><br>**ORDER** |

Pending before the Court are the following motions: (1) Plaintiff James A. Mills' Motion for Summary Judgment (Doc. 32); and (2) Motion for Summary Judgment (Doc. 42) filed by Defendants Southwest Service Administrators ("SSA") and Phoenix Painting & Allied Trades Union No. 86 ("Local 86"). For the reasons stated below, the Court denies Plaintiff's Motion for Summary Judgment, and grants Defendants' Motion for Summary Judgment.[1]

**BACKGROUND**

Mr. Mills, appearing *pro se*, filed the instant civil action on February 2, 2010. (Doc. 1). According to his Amended Complaint, Mills worked as a painter from 1963 until 1974, during which time he was represented by the Union. (Doc. 27). In July 1974, he began

---

[1] Plaintiff submits several documents in response to Defendants' cross-motion for summary judgment. For purposes of this Order, the Court construed Doc. 56 as Plaintiff's response. Doc. 56 and Doc. 58 are identical.

operating his own painting company, and successfully operated that company until he was injured in a 1975 car accident, which caused him severe nerve damage. Due to the accident, and despite two years of therapy, Mills was not able to return to work and began receiving social security benefits.

In 1978 and then again in 2004, Mills petitioned the Union for pension benefits from the Phoenix Painters' Pension Trust Fund, to which he asserts entitlement as a member of the Union. The Union, however, apparently through SSA, denied benefits because Mills was not vested. The denial letter, dated November 7, 2005, relied on Article VI Section 6.04(2) of the Plan Document, which provides "[p]rior to December 1, 1976, the years of Pension Credit were vested after an Employee had accumulated at least (12) years of Pension Credit without an intervening Permanent Break in Covered Employment." (Doc. 32, Ex. 7). The letter noted that because Plaintiff only had a total of 9.50 pension credits, he was not vested, and therefore not eligible to receive pension benefits. (*Id.*). Plaintiff was advised of his ability to appeal the denial through written notice within 60 days. (*Id.*). On December 15, 2005, Plaintiff filed a "Claim Notice of intent to file tort" ("Notice of intent") giving notice that he would file a tort claim for deprivation of pension benefits and detailing the ways he believed he had been wronged in the processing of his claim. (Doc. 32, Ex. 8). On January 6, 2006, David Niederdeppe, general counsel to the board of trustees of the Phoenix Painters' Pension Trust Fund, sent a letter to SSA suggesting that because Plaintiff's Notice of Intent was received within 60 days of the denial letter, SSA should "treat it as an appeal and present it to the Board at the next regular meeting." (*Id.*). After informing Plaintiff that his Notice of Intent would be presented to the Board at their next meeting, SSA provided the Board with a memorandum detailing the background of the case and notifying them of Niederdeppe's suggestion to construe the Notice as Plaintiff's appeal. (Doc. 32, Ex. 8). The Board subsequently denied Plaintiff's appeal on the same grounds as its initial denial.

Based on the board of trustees' decision to deny benefits initially and on appeal, Mills alleges in his Amended Complaint that the Union and SSA violated his rights under 42 U.S.C. §§ 1983, 1985, and 29 U.S.C. § 1132(a)(3), also known as the Employee Retirement

- 2 -

Income Security Act ("ERISA").[2] Plaintiff and Defendants move for Summary Judgment on all of Plaintiff's claims. (Doc. 32, Doc. 42).

**DISCUSSION**

**I.     Legal Standard**

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)(2). Substantive law determines which facts are material and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). "A fact issue is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (quoting *Anderson,* 477 U.S. at 248). Thus, the nonmoving party must show that the genuine factual issues "'can be resolved only by a finder of fact *because they may reasonably be resolved in favor of either party.*'" *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987) (quoting *Anderson*, 477 U.S. at 250).

**II.    Motions for Summary Judgment**

**A. ERISA Claims**

Plaintiff asserts an ERISA claim pursuant to Section 502(a)(3), which provides:

> A civil action may be brought by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan. 29 U.S.C. §1132(a)(3).

"To establish an action for equitable relief under . . . 29 U.S.C. § 1132(a)(3), the defendant

---

[2] In his original Complaint, Plaintiff asserted claims pursuant to the Americans with Disabilities Act and Title VII of the Civil Rights Act. (Doc. 1). Because Plaintiff has not incorporated those claims in his Amended Complaint (Doc. 27), the Court cannot consider them. *See Hal Roach Studios v. Richard Feiner & Co.*, 896 F.2d 1542, 1546 (9th Cir. 1990) ("an amended pleading supersedes the original").

1 must be an ERISA fiduciary acting in its fiduciary capacity, and must violate ERISA-imposed fiduciary obligations [.]" *Mathews v. Chevron Corp.*, 362 F.3d 1172, 1178 (9th Cir. 2004) (citations, internal quotation marks, and alteration omitted). The Supreme Court has held that 29 U.S.C. § 1132(a)(3) is a catchall provision that acts as a safety net, "offering appropriate equitable relief for injuries caused by violations that [29 U.S.C. § 1132] does not *elsewhere* adequately remedy." *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 221 n.5 (2002) (emphasis added) (citing *Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996)). Thus, Plaintiff may not pursue a remedy pursuant to section 1132(a)(3) when another ERISA provision provides adequate relief. *See, e.g., Varity Corp.*, 516 U.S. at 515 (permitting plaintiffs to pursue equitable relief only because plaintiffs could not proceed under other ERISA provisions); *Forsyth v. Humana*, 114 F.3d 1467, 1475 (9th Cir. 1997) ("Equitable relief under section 1132(a)(3) is not 'appropriate' because section 1132(a)(1) provides an adequate remedy in this case.") *aff'd*, 525 U.S. 299 (1999).

In his Amended Complaint, Plaintiff seeks to recover benefits due to him pursuant to the Phoenix Painters' Pension Trust Fund. (Doc. 27 at 4). Such relief clearly falls within the ambit of 29 U.S.C. § 1132(a)(1)(B), which provides that "[a] civil action may be brought . . . by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan." ERISA authorizes actions to recover benefits against the Plan as an entity, 29 U.S.C. § 1132(d)(1), and against the Plan's administrator, *Ford v. MCI Commc'ns Corp. Health & Welfare Plan*, 399 F.3d 1076, 1081 (9th Cir. 2005) (citing 29 U.S.C. § 1132(a)(1)(B)); *see also Everhart v. Allmerica Fin. Life Ins. Co.*, 275 F.3d 751, 754 (9th Cir. 2001); *Verderose v. Envisedge*, 2010 WL 1531066, *3 n.2 (D. Ariz. Apr. 15, 2010). Because Plaintiff retains the right to pursue his claims under § 1132(a)(1)(B), which provides specific relief for the sort of injury Plaintiff allegedly suffered in this case, he is precluded from pursuing a remedy under § 1132(a)(3). *See Varity Corp.*, 516 U.S. at 515; *Forsyth*, 114 F.3d at 1475. In his motion for summary judgment Plaintiff correctly notes that *Varity* interprets § 1132(a)(3) to allow individual relief for a breach of a fiduciary duty in an ERISA action, but overlooks that the Court also held that this is the case only where no other adequate relief is available. 516

- 4 -

1  U.S. at 515. Plaintiff was alerted to this error in his pleadings by Defendants at the motion
2  to dismiss stage but did not rectify it in his Amended Complaint. At the summary judgment
3  stage, it would be improper to grant Plaintiff further leave to amend his Complaint. *See*
4  *United States v. Pend Oreille Pub. Util. Dist. No. 1*, 28 F.3d 1544, 1552 (9th Cir. 1994)
5  (upholding practice of denying leave to amend complaint after a motion for summary
6  judgment has been filed).

7  Further, money damages are not an available remedy under ERISA's equitable safety
8  net. *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 256 (1993) (finding that the "other appropriate
9  equitable relief" language in § 1132(a)(3) is limited "to those categories of relief that were
10 *typically* available in equity (such as injunction, mandamus, and restitution, but not
11 compensatory damages)"); *Wise v. Verizon Commc'ns, Inc.*, 600 F.3d 1180, 1190 (9th Cir.
12 2010). Ninth Circuit authority provides that "[i]n determining whether an action for equitable
13 relief is properly brought under ERISA, we look to the 'substance of the remedy sought
14 . . . rather than the label placed on that remedy.'" *Westaff (USA) Inc. v. Arce*, 298 F.3d 1164,
15 1166 (9th Cir. 2002) (quoting *Watkins v. Westinghouse Hanford Co.*, 12 F.3d 1517, 1528 n.5
16 (9th Cir. 1993)), *cert. denied*, 537 U.S. 1111 (2003). Here, Plaintiff seeks punitive damages
17 and compensatory damages for the twelve years of accumulated contributions to his
18 retirement pension plan, plus interest. (Doc. 27 at 4). In his Complaint and throughout his
19 briefings Plaintiff has not requested any equitable relief.

20 Finally, to the extent Plaintiff asserts that Defendants breached their fiduciary duty
21 to him pursuant to ERISA by construing his Notice of Intent as his appeal, Plaintiff has failed
22 to offer any explanation as to how he was damaged by receiving a review on appeal for
23 which he otherwise would not have qualified. Further, Plaintiff fails to set forth any evidence
24 establishing that either Defendant is an ERISA fiduciary. ERISA permits suits for breach of
25 fiduciary duty only against ERISA-defined fiduciaries. *Gibson v. Prudential Ins. Co. of*
26 *America*, 915 F.2d 414, 417 (9th Cir. 1990). ERISA defines a fiduciary as anyone who
27 exercises discretionary authority or control respecting the management or administration of
28

an employee benefit plan.[3] *See* 29 U.S.C. § 1002(21)(A).  Thus, ERISA defines fiduciary "not in terms of formal trusteeship, but in *functional* terms of control and authority over the plan." *Mertens v. Hewitt Assoc.*, 508 U.S. 248, 262 (1993). The Summary Plan Description does not name either Local 86 or SSA as fiduciaries over the Plan. (Doc. 47, Ex. 1). Rather, with respect to Local 86, Defendants have provided admissible evidence that "[a]s to operations of the Trust Fund, Local 86's role was and is limited to appointing half of the members of the board of trustees" and that "Local 86 played no role in the decision of the Plan's trustees to deny Plaintiff's pension application." (Doc. 44, ¶ 6; Doc. 44, Ex. 1 at 3–4). Plaintiff has provided no evidence to rebut the plain meaning of Article III, § E of the 2001 Restated Agreement and Declaration of Trust of the Phoenix Painters' Pension Trust Fund, which provides that "[n]either the Employers . . . nor the Union shall be liable in any respect for any of the obligations or acts of the Trustees because such Trustees are in any way associated with such employers, association or union." (Doc. 44, Ex. 1). Thus, Plaintiff has not created a triable issue as to Local 86's fiduciary status.

With respect to SSA, the Summary Plan Description states that the "Trustees have engaged the independent contractor named below [SSA] to perform the routine administration of the Plan." (Doc. 47, Ex. 1).  Third party administrators, like SSA, are not fiduciaries under ERISA when they merely perform ministerial duties or process claims. *Kyle Ry. Inc. v. Pac. Admin. Serv., Inc.*, 990 F.2d 513, 516 (9th Cir. 1993); *see also Gibson*, 915 F.2d at 417; *Gelardi v. Pertec Comp. Corp.*, 761 F.2d 1323, 1325 (9th Cir. 1985) (citing 29 C.F.R. § 2509.75-8(d-2)) (insurance company hired by employer to administer ERISA plan not a fiduciary when it "performs only administrative functions, processing claims within a framework of policies, rules, and procedures established by others"). Defendants have

---

[3] ERISA provides that "a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets . . . or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A).

- 6 -

1 submitted evidence that SSA is simply one of the service providers hired by the Plan's board
2 of trustees to carry out the day-to-day functions of the Trust Fund. (Doc. 44, ¶¶ 14–15; Doc.
3 45, ¶¶ 3–4). SSA provides a variety of ministerial duties for the Trust Fund, including
4 tallying the number of hours worked each year by participants. (Doc. 44, ¶¶ 16–17; Doc. 45,
5 ¶¶ 5–6; Doc. 46, ¶¶ 3–6). Specifically, SSA houses the records reflecting the work history
6 of all Plan participants and prepares summaries of them, which are then used by the Plan
7 trustees to evaluate whether a participant has worked enough to earn a pension. (Doc. 44, ¶
8 18; Doc. 45, ¶ 7; Doc. 46, ¶ 7). SSA does not participate in the actual evaluation process for
9 each pension application; that function is reserved for the board of trustees. (Doc. 44, ¶16;
10 Doc. 45, ¶ 10; Doc. 46, ¶ 9). Similarly, appeals from an initial adverse decision are handled
11 by the board of trustees and SSA's only participation in the process is to gather the appeals
12 and the Trust Fund's records for review by the board of trustees. (Doc. 44, ¶¶ 20–21; Doc.
13 45, ¶ 11; Doc. 46, ¶ 9). In short, "[t]he Pension Plan is administered by a Board of Trustees
14 made up of representatives of the Union and of the Employers" (Doc. 47, Ex. 1 at 48), and
15 "SSA does not, in fact, exercise any discretionary authority or discretionary responsibility
16 in the administration of the plan." (Doc. 46, ¶ 6). Because the record demonstrates that the
17 scope of SSA's conduct is limited to ministerial matters, which Plaintiff has offered no
18 evidence to rebut, SSA cannot be considered an ERISA-defined fiduciary.

19 In light of the fact that Plaintiff seeks compensatory damages, which are unavailable
20 pursuant to § 1132(a)(3), and because another ERISA provision provides adequate relief,
21 entry of summary judgment in favor of Defendants is proper. Further, because Mills has
22 failed to raise a material question of fact regarding either Defendant's liability under ERISA
23 as a fiduciary, summary judgement is also proper with respect to this aspect of Plaintiff's
24 ERISA claim.

25 **B. 42 U.S.C. § 1983 Claim**

26 Section 1983 provides a cause of action against persons acting under color of state law
27 who have violated rights guaranteed by the United States Constitution and federal law. 42
28 U.S.C. § 1983; *see also Buckley v. City of Redding*, 66 F.3d 188, 190 (9th Cir. 1995). To

state a claim under § 1983, a plaintiff must allege facts supporting that (1) the conduct about which he complains was committed by a person acting under the color of state law and (2) the conduct deprived him of a federal constitutional or statutory right. *Wood v. Ostrander*, 879 F.2d 583, 587 (9th Cir. 1989). A plaintiff must also allege that he suffered a specific injury as a result of the conduct of a particular defendant and he must allege an affirmative link between the injury and the conduct of that defendant. *Rizzo v. Goode*, 423 U.S. 362, 371–72, 377 (1976). The crux of Plaintiff's claim is that Defendants conspired to prevent him from appealing the denial of his requested pension benefits and then attempted to cover it up.

  A person acts under color of state law if he "exercise[s] power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *West v. Atkins*, 487 U.S. 42, 49 (1998) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)). Like the state-action requirement of the Fourteenth Amendment, the under-color-of-state-law element of § 1983 excludes from its reach "'merely private conduct, no matter how discriminatory or wrongful.'" *Blum v. Yaretsky*, 457 U.S. 991, 1002 (1982) (quoting *Shelley v. Kraemer*, 334 U.S. 1, 13 (1948)). However, the Supreme Court has articulated four distinct tests for determining when the actions of a private individual amount to state action: (1) the public function test; (2) the joint action test; (3) the state compulsion test; and (4) the governmental nexus test. *Id.* at 1148–49; *see also Georges v. Pacific-CSC Work Furlough*, 91 F.3d 1227, 1231 (9th Cir. 1996). Plaintiff does not assert that the decision to deny him pension benefits should be attributed to the State because the State compelled or was directly involved in that decision. Plaintiff also fails to provide specific factual evidence that Defendants SSA and Local 86 were private entities whose actions somehow amounted to state action.

  On the other hand, Defendants have submitted admissible evidence asserting that SSA is one of the independent contractors hired by the Plan's board of trustees to carry out the day-to-day functions of the Trust Fund. (Doc. 44, ¶¶ 14–15; Doc. 45, ¶¶ 3–4); *see discussion supra* section II.A. Moreover, Defendants provide that Local 86 is "a labor organization whose members work in the painting and allied trades" and who was "party to a series of

1 collective bargaining agreements with various employers of Plaintiff." (Doc. 44, ¶¶ 3–4). The
2 fact that the Plan is regulated by ERISA does not, by itself, transform Defendants' activities
3 into state action. The Supreme Court has repeatedly held in cases involving extensive state
4 regulation of private activity, that "[t]he mere fact that a business is subject to state regulation
5 does not by itself convert its action into that of the State for purposes of the Fourteenth
6 Amendment." *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 350 (1974); *see Blum*, 457 U.S.
7 at 1004. Accordingly, the decision to withhold Plaintiff's pension benefits was made by
8 concededly private parties and "turns on . . . judgments made by private parties." *Blum*, 457
9 at 1008.   Thus, there is no material issue of fact with respect to the first required prong of
10 a §1983 action, namely whether Defendants acted under color of state law.

11 Even if Defendants' activities could somehow be construed as state action, Plaintiff
12 has not created a triable issue of fact as to whether Defendants' conduct deprived him of a
13 federal constitutional or statutory right. While Plaintiff alleges that he had a constitutional
14 right to appeal his denial of pension benefits and that he was denied that opportunity,
15 evidence submitted by Plaintiff himself, as well by the Defendants, demonstrates the
16 contrary. In a letter, dated November 7, 2005, SSA Pension Analyst Genevieve Placencio
17 denied Plaintiff's request for benefits because he was not vested under the Plan and advised
18 him that he could file "a written notice of appeal with the Board of Trustees . . . within sixty
19 (60) days of [his] receipt of this letter. (Doc. 32, Ex. 7; Doc. 59-1). On December 15, 2005,
20 Mills submitted a Notice of Intent indicating that he was "going to file a tort claim in the
21 amount of $5,000,000 for deprivation of pension benefits" and provided an explanation for
22 why he thought he was wrongfully denied his pension benefits. (Doc. 32, Ex. 8; Doc. 59-1).
23 In a letter, dated January 6, 2006, Niederdeppe suggested to SSA that because Plaintiff's
24 Notice of Intent was received within 60 days of the denial letter, SSA should "treat it as an
25 appeal and present it to the Board at the next regular meeting." (Doc. 32, Ex. 8; Doc. 59-1).
26 On January 10, 2006, SSA notified Plaintiff that they had received his December 2005
27 correspondence and that it "will be presented to the Board of Trustees at their next regular
28 meeting." (*Id.*). In a memorandum, dated February 1, 2006, the board of trustees was

1 provided with relevant background information and the status of Plaintiff's case and
2 informed about Niederdeppe's suggestion that Plaintiff's Notice of Intent be construed as his
3 appeal and reviewed accordingly. (Doc. 32, Ex. 7). In a letter, dated February 22, 2006,
4 Plaintiff was informed that the board of trustees had denied his appeal because "the Pension
5 Fund required 12 years of Pension Credit for vesting in 1973, and because [he] had only 9.5
6 of such credit at the time [he] left the Plan-covered worked, as detailed in the November 7th
7 correspondence." (Doc. 47, Ex. 2). Plaintiff's argument that his Notice of Intent was sent "in
8 a quest for the plaintiff to get the complete record in order to file an appeal," is unavailing.
9 Plaintiff failed to file an appeal within the permitted 60 days and also failed to object to
10 Defendants' notice to him regarding the Board's pending review of his Notice of Intent. As
11 a result, Plaintiff was allowed to appeal the denial of his claim to the Board. Accordingly,
12 summary judgment in favor of Defendants is appropriate on Plaintiff's § 1983 claim.

### C. 42 U.S.C. § 1985 Claim

14 Plaintiff's final cause of action alleges violation of 42 U.S.C. § 1985(3), which
15 prohibits two or more persons from conspiring to deprive any person or class of persons of
16 the equal protection of the law. To bring a cause of action successfully under § 1985(3), a
17 plaintiff must allege and prove four elements: (1) a conspiracy; (2) for the purpose of
18 depriving, either directly or indirectly, any person or class of persons of the equal protection
19 of the laws, or of equal privileges and immunities under the laws; and (3) an act in
20 furtherance of this conspiracy; (4) whereby a person is either injured in his person or
21 property or deprived of any right or privilege of a citizen of the United States. *Sever v.*
22 *Alaska Pulp Corp*., 978 F.2d 1529, 1536 (9th Cir. 1992). The second of these four elements
23 requires that in addition to identifying a legally protected right, a plaintiff must demonstrate
24 a deprivation of that right motivated by "some racial, or perhaps otherwise class-based,
25 invidiously discriminatory animus behind the conspirators' action." *Id*. (quoting *Griffith v.*
26 *Breckenridge*, 403 U.S. 88, 2012 (1971)).

27 In the instant case, Mills alleges that "[i]n misleading plaintiff, the defendants
28 [p]articipated knowingly [a]nd significantly in deceiving [t]he plaintiff of a [c]onstitutional

1  right of [a]ppeal using [a] conspiracy." (Doc. 51 at 8; Doc. 56 at 8). He further contends that
2  "he [drew] the inference that blacks are not to participate in the Painter's Union pension
3  Benefit program," suggesting that African Americans are the class allegedly deprived of this
4  right to appeal. (Doc. 27 at 3). Defendants assert that summary judgment is proper because
5  Plaintiff has offered no evidence that the deprivation of his rights, if any, was motivated by
6  "class-based, invidiously discriminatory animus," as required by the statute. Defendants rely
7  on affidavits from Lonnie Tinder, a labor-appointed Trustee on the Fund (Doc. 44, ¶¶ 24–25),
8  Linda Suydam, SSA Account Manager, (Doc. 46, ¶¶ 27–28), and David Niederdeppe,
9  general counsel to the board of trustees (Doc. 47, ¶¶ 17–18), to support their contention that
10 Plaintiff's race was never considered.
11       Plaintiff has offered no evidence to rebut Defendants' evidence. In fact, apart from
12 his "inference" that "blacks are not to participate in the Painter's Union pension Benefit
13 program", Plaintiff makes no further mention of his race or how Defendants' actions were
14 racially motivated. Instead, he relies on two documents: (1) Niederdeppe's letter suggesting
15 that the Plaintiff's Notice of Intent be construed as his appeal (Doc. 32, Ex. 7), and (2) SSA's
16 memorandum to the board of trustees, in which they outline key activities in Mills' case (*Id.*).
17 *See also* Doc. 52 at 3.  In his letter, Niederdeppe explains that because Plaintiff's Notice of
18 Intent was received within 60 days of the denial letter, his suggestion would be "to treat it
19 as an appeal and present it to the Board at their next regular meeting." (Doc. 32, Ex. 7). He
20 further advises that SSA inform Plaintiff that his Notice is being treated as an appeal and will
21 be presented to the Board. (*Id.*). Finally, he suggests that he and Suydam "report briefly to
22 the Trustees on the background status of this matter when they next congregate and let them
23 take whatever action they choose to take on it." (*Id.*). As such, SSA provided the Board with
24 a memorandum providing a timeline and basic background information on Plaintiff's case,
25 including Niederdeppe's suggestion that the Notice of Intent be treated as Plaintiff's appeal.
26 Neither of these documents satisfies Plaintiff's burden of establishing a genuine factual issue
27 with respect to whether Defendants entered into a conspiracy, motivated by racial animus,
28 in order to deprive Plaintiff of his right to appeal.

1. Further, in view of the Court's determination that Local 86 played no role in the decision to construe Plaintiff's Notice of Intent as his appeal, and that it was well within SSA's rights to merely inform the board of trustees that their general counsel had suggested construing Plaintiff's Notice as his appeal, *see discussion supra* section II.B, Plaintiff has not satisfied his burden of presenting substantial factual evidence to raise an issue precluding summary judgment with respect to Defendants' alleged conspiracy to deprive him of the equal protection of the laws. Thus, Defendants are entitled to summary judgment on Plaintiff's §1985(3) claim.

**IT IS HEREBY ORDERED** that:

1. Plaintiff's Motion for Summary Judgment (Doc. 32) is **DENIED**.
2. Defendants' Cross-Motion for Summary Judgment (Doc. 42) is **GRANTED**.
3. The Clerk of the Court is directed to terminate this action.

DATED this 20th day of May, 2011.

*A. Murray Snow*
G. Murray Snow
United States District Judge